IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL  DIVISION

| | | |
|---|---|---|
| TERESA PARSONS, | * | |
| | * | |
| Plaintiff, | * | 4:08-cv-402 |
| | * | |
| v. | * | |
| | * | |
| PRINCIPAL LIFE INSURANCE COMPANY, | * | |
| | * | ORDER |
| Defendant. | * | |
| | * | |

Before the Court is a Motion for Summary Judgment, filed August 10, 2009, by Principal

Life Insurance Company ("Defendant" or "Principal").  Clerk's No. 9.  Teresa Parsons

("Plaintiff" or "Parsons") filed a resistance to the Motion on September 14, 2009.  Clerk's No.

16.  Principal filed a reply brief on September 30, 2009.  Clerk's No. 20.  A hearing was held on

February 19, 2009.  Clerk's No. 28.  The matter is fully submitted.

I.  FACTUAL BACKGROUND

Teresa Parsons worked at Principal for nearly 30 years, from January 26, 1979 until her

termination on June 16, 2008.  *See* Pl.'s Resp. to Def.'s Statement of Facts ¶ 1 (hereinafter "Pl.'s

Resp. to Facts"); Def.'s Resp. to Pl.'s Statement of Additional Material Facts ¶ 1 (hereinafter

"Def.'s Resp. to Additional Facts").  At the time of her termination, Parsons was a team

assistant-life administrator and was supervised by Tammy Howard ("Howard"), who was, in

turn, supervised by Dave Blackman ("Blackman").  Pl.'s Resp. to Facts ¶ 5.  Throughout her

employment at Principal, Parsons worked under Principal's standard employee policies, received

periodic pay raises, obtained transfers, and utilized customary benefits as extended to other full-

time employees.  *Id.* ¶ 25.

The last day Parsons worked at Principal was May 28, 2008.  *Id.* ¶ 4.  Due to suicidal thoughts, Parsons was hospitalized early in the morning on May 29, 2008; Parsons called Blackman that day and stated that she was hospitalized and would be unable to work for the next week.  *See* Def.'s Resp. to Additional Facts ¶¶ 2-4.  On May 31, 2008, Parsons was released from the hospital.  Pl.'s App. at 37 (Parsons Aff. ¶ 4).  Parsons left another voicemail message for Blackman on June 2, 2008, stating she would be absent for at least one month.  Pl.'s Resp. to Facts ¶ 8; Def.'s App. at 42.  Principal mailed a Family Medical Leave Act ("FMLA") packet to Parsons on June 3, 2008.   Pl.'s Resp. to Facts ¶ 9.  Parsons filled out the packet and forwarded it to Dr. Kim, her healthcare provider, for certification on June 8, 2008.  Def.'s Resp. to Additional Facts ¶ 7.

On June 9, 2008,  Parsons called Principal and left a voicemail message stating that she would be unable to work until June 30, 2008.  *Id.* ¶ 10.  On June 12, 2008, Howard sent a letter to Parsons reminding her that, pursuant to Principal's policies, she needed to call in daily until her request for a leave of absence was approved.  *Id.* ¶ 11.  Parsons did not call in regarding her absences from work on June 12, 13, 17, 18, 19, or 20.  Pl.'s Resp. to Facts ¶ 15; *see also* Def.'s App. at 26.  On June 16, 2008, Principal received Parsons' FMLA request, which included a certification form from Dr. Kim stating that Parsons could not return to work until June 30, 2008.  Def.'s Resp. to Additional Facts ¶¶ 7, 11.  On June 20, 2008, Principal denied Parsons' FMLA request on the basis that the "medical information provided does not support a serious health condition as defined under the FMLA."  *Id.* ¶ 18.  Plaintiff received the FMLA denial letter on Saturday, June 21, 2008.  *Id.* ¶ 21.  On Monday, June 23, 2008, Parsons called Principal's Employee Relations Department and spoke with Ms. Swanson, an employee in that department,

who informed Parsons that her FMLA Request was denied because the medical certification provided by Dr. Kim on June 16 was incomplete in that it did not provide information regarding Parsons' hospitalization, her prescriptions, the dates she saw her physician, or her treatment.  *Id.* ¶¶ 21-23.  On June 24, 2008, Parsons contacted Iowa Lutheran Hospital and requested that additional medical information be provided to Defendant.  *Id.* ¶¶ 25-28.  On the same day, Swanson contacted Dr. Kim's office and requested a complete medical certification form.  *Id*. ¶ 25.  Later in the day on June 24, 2008, Iowa Lutheran Hospital faxed Principal information about Parsons' hospitalization, her prescriptions, and the days she had seen her psychiatrist, but Swanson did not actually receive the records until the following day, June 25, 2008.  *Id.* ¶¶ 28-29.  Despite these efforts by Plaintiff and Swanson to obtain complete FMLA certification materials, Howard sent Parsons a letter dated June 24, 2008, informing Parsons that her employment was terminated, effective June 16, 2008, for her failure to call in her absences or report to work from June 17 through June 20, 2008.  Pl.'s Resp. to Facts ¶ 17.

On June 26, 2008, Parsons called Howard and left a message asking Howard to call her to discuss the termination.  Def.'s Resp. to Additional Facts ¶ 30.  At the direction of Principal's Human Resources Department, Howard did not return Parsons' call.  *Id*. ¶ 31.  Parsons also contacted Principal's Human Resources Department on June 26, 2008, to request reconsideration of her request for FMLA leave.  *Id.* ¶ 32.  She spoke with Rick Robertson, who told Parsons that her job was terminated due to "job abandonment" and that the termination had "nothing to do with FMLA."  *Id*.

## II.  STANDARD OF REVIEW

The precise standard for granting summary judgment is well established and oft-repeated:

summary judgment is properly granted when the record, viewed in the light most favorable to the

nonmoving party and giving that party the benefit of all reasonable inferences, shows that there

is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of

law. *See* Fed. R. Civ. P. 56(c); *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir.

1994).  The Court does not weigh the evidence nor make credibility determinations, rather the

Court only determines whether there are any disputed issues and, if so, whether those issues are

both genuine and material.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986);

*Wilson v. Myers*, 823 F.2d 253, 256 (8th Cir. 1987) ("Summary judgment is not designed to

weed out dubious claims, but to eliminate those claims with no basis in material fact.") (citing

*Weightwatchers of Quebec*, *Ltd. v. Weightwatchers Int'l*, *Inc.*, 398 F. Supp. 1047, 1055

(E.D.N.Y. 1975)).

     The moving party bears the initial burden of demonstrating the absence of a genuine

issue of material fact based on the pleadings, depositions, answers to interrogatories, admissions

on file, and affidavits, if any.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson*,

477 U.S. at 248.  Once the moving party has carried its burden, the nonmoving party must go

beyond the pleadings and, by affidavits or by the depositions, answers to interrogatories, and

admissions on file, designate specific facts showing that there is a genuine issue for trial.  *See*

Fed. R. Civ. P. 56(c), (e); *Celotex Corp.*, 477 U.S. at 322-23; *Anderson*, 477 U.S. at 257.  "[T]he

mere existence of *some* alleged factual dispute between the parties will not defeat a motion for

summary judgment; the requirement is that there be no *genuine* issue of *material* fact."

*Anderson*, 477 U.S. at 247-48.  An issue is "genuine," if the evidence is sufficient to persuade a

reasonable jury to return a verdict for the nonmoving party.  *See id.* at 248.  "As to materiality,

the substantive law will identify which facts are material . . . .  Factual disputes that are

irrelevant or unnecessary will not be counted."  *Id.*

## III.  LAW AND ANALYSIS

There are two types of claims under the FMLA:  1) "retaliation" or "(a)(2)" claims, that

is, "claims in which the employee alleges that the employer discriminated against him for

exercising his FMLA rights"; and 2) "interference" or "(a)(1)" claims, that is, "claims in which

the employee alleges that an employer denied or interfered with his substantive rights under the

FMLA."  *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006) (citing 29 U.S.C. §

2615(a)(1)-(2)).  In the present case, Plaintiff asserts both a retaliation and an interference claim

under the FMLA.  *See* Compl. ¶ 27 ("Defendant interfered with Plaintiff's right to take leave

under the [FMLA]."); ¶ 30 ("Defendant discriminated against Plaintiff and fired her for

exercising her rights under the [FMLA].").

An FMLA retaliation claim will arise when an employee asserts that an employer

discriminated or retaliated against her for asserting rights under the FMLA.  *Stallings*, 447 F.3d

at 1051; *see also Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 832 (8th Cir. 2002) ("Basing an

adverse employment action on an employee's use of [FMLA] leave . . . is therefore actionable.").

To analyze an FMLA retaliation claim, courts employ the familiar *McDonnell Douglas* burden-

shifting framework.  *See, e.g.*, *Phillips v. Mathews*, 547 F.3d 905, 912 (8th Cir. 2008) ("Because

Phillips does not have direct evidence of retaliation, we analyze her FMLA retaliation claim

under the *McDonnell Douglas* burden-shifting framework.").  Under this paradigm, the

employee must first "establish a prima facie case of retaliatory discrimination by showing that

she exercised rights afforded by the [FMLA], that she suffered an adverse employment action,

and that there was a causal connection between her exercise of rights and the adverse employment action." *McDonnell Douglas v. Green*, 411 U.S. 792, 802-03 (1973).  If the plaintiff establishes a prima facie case, the burden of production shifts at the second stage to the defendant, who must articulate some legitimate, nondiscriminatory reason for the adverse employment action. *Tex. Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted and "drops from the case." *Id.* at 255 n.10.  The burden then shifts back at the third and final stage to the plaintiff, who is given the opportunity to show that the employer's proffered reason was merely a pretext for discrimination. *Id.* at 253.  At all times "[t]he employee bears the ultimate burden of proving that FMLA leave was the determinative factor in the negative employment action." *Bumgarner v. Grafco Indus., LP*, 581 F. Supp. 2d 1052, 1060 (S.D. Iowa 2008).

An FMLA interference claim, on the other hand, arises when an employer refuses to authorize FMLA leave, discourages an employee from using FMLA leave, manipulates in such a way as to avoid its responsibilities under the FMLA, or engages in any activity "that deters an employee from participating in protected activities." *Stallings*, 447 F.3d at 1050 ("When an employer attaches negative consequences to the exercise of protected rights, it has 'chilled' the employee's willingness to exercise those rights because he or she does not want to be fired or disciplined for doing so." (citing *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001)).  The Eighth Circuit has explicitly rejected the use of the *McDonnell Douglas* framework for analyzing FMLA interference claims:

> In an interference claim, an "employee must show only that he or she was entitled to the benefit denied." *Russell v. N. Broward Hosp.*, 346 F.3d 1335, 1340 (11th Cir.

2003) (stating that the burden to establish an interference claim is less than that of a retaliation claim, which requires a showing that the employer's actions were motivated by an impermissible retaliatory animus). This court has recognized that an employee can prove interference with an FMLA right regardless of the employer's intent. *Throneberry* [*v. McGehee Desha County Hosp.*], 403 F.3d [972,] 979 [(8th Cir. 2005)]. An employee can prevail under an interference theory if he was denied substantive rights under the FMLA for a reason connected with his FMLA leave. *Id.* "[E]very discharge of an employee while [he] is taking FMLA leave interferes with an employee's FMLA rights. However, the mere fact of discharge *during* FMLA leave by no means demands an employer be held strictly liable for violating the FMLA's prohibition of interfering with an employee's FMLA rights." *Id.* at 980 (emphasis added). Thus, where an employer's reason for dismissal is insufficiently related to FMLA leave, the reason will not support the employee's recovery. *Id.* at 979 (holding that strict liability does not apply to an (a)(1) claim).

*Id.* at 1050-51 & n.3. "Confusion often arises as to whether an employee's FMLA claim 'is really about interference with his substantive rights, not discrimination or retaliation.'" *Id.* at 1051 (quoting *Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 884 (7th Cir. 2005)). "The difference between the two claims is that the interference claim merely requires proof that the employer denied the employee his entitlements under the FMLA, while the retaliation claims requires proof of retaliatory intent." *Id.* "'Although in some circumstances, a given set of facts will clearly fall into either (a)(1) [interference] or (a)(2) [retaliation], it appears that the lines between the two categories are not hard and fast.'" *Id.* (quoting *Dillaway v. Ferrante*, No. 02-715, 2003 WL 23109696, at *5 (D. Minn. Dec. 9, 2003)).

In its Motion for Summary Judgment, Defendant argues that Plaintiff's FMLA claims fail as a matter of law because, regardless of the type of FMLA claim asserted, an employee will not be able to recover "'where an employer's reason for dismissal is insufficiently related to FMLA leave.'" Def.'s Br. at 11 (quoting *Stallings*, 447 F.3d at 1051). More specifically, Defendant asserts that Plaintiff was not terminated for exercising her rights under the FMLA, but rather was

terminated for failing to call in her absences on June 17-20, 2008, as required by Principal's uniformly applied absence notice policy. *See* Def.'s Br. at 9-15. Plaintiff, on the other hand, contends that Defendant's enforcement of its absence notice policy in this case is illegal because the policy is more strict than the provisions of the FMLA and, as such, interferes with Plaintiff's rights under the FMLA. *See* Pl.'s Resistance Br. at 6-14. Plaintiff further contends that Defendant's stated reason for her termination is mere pretext for Defendant's retaliatory motive.

## A. *FMLA Overview*

The FMLA was established to "balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in preserving family integrity." 29 U.S.C. § 2601(b)(1) (2009). At the time of the events giving rise to the present action, the FMLA and its corresponding regulations provided that employees could take a total of 12 workweeks of leave during any 12 month period for any of the following reasons: (1) the birth of the employee's child; (2) to care for an adopted child or foster child newly placed with the employee's family; (3) to care for the employee's spouse, child, or parent suffering from a serious health condition; or (4) the employee is unable to perform one or more of the essential functions of his or her job due to a serious health condition. 29 C.F.R. § 825.200 (1995).[1]

## B. *Employee Notice of FMLA Request*

To be entitled to FMLA leave, an employee must first timely notify her employer of her

---

[1] While significant amendments to the FMLA regulations became effective on January 16, 2009, the Court applies the 1995 regulations to this action because the events giving rise to this lawsuit occurred prior to enactment of the amendments. *See Scobey v. Nucor Steel-Ark.*, 580 F.3d 781, 788 & n.5 (8th Cir. 2009).

need for leave.  29 C.F.R. §§ 825.302, 825.303 (1995).  If the leave is foreseeable, the employee

must notify the employer at least 30 days before the FMLA leave is to begin, or "as soon as

practicable" if 30 days notice cannot be practically given.  *Id.* § 825.302.  Where, however, the

need for leave is not foreseeable, "an employee should give notice to the employer of the need

for FMLA leave as soon as practicable under the facts and circumstances of the particular case."

*Id*. § 825.303(a).  Generally, it is "expected that an employee will give notice to the employer

within no more than one or two working days of learning of the need for leave, except in

extraordinary circumstances where such notice is not feasible."  *Id*.  Notice to an employer of a

need for FMLA leave may be made by the party seeking leave, or by a spokesperson if the

employee is unable to notify the employer personally, and may be made "in person or by

telephone, telegraph, facsimile ("fax") machine or other electronic means."  *Id*. § 825.303(b).

"The employee need not expressly assert rights under the FMLA or even mention the FMLA, but

may only state that leave is needed.  The employer will be expected to obtain any additional

required information through informal means."  *Id*.

In the present case, Principal does not dispute that Plaintiff provided timely notice of her

desire for FMLA leave.  *See* Def.'s Resp. to Additional Facts ¶ 4 ("Defendant does not dispute

that Plaintiff provided timely and sufficient notice of her request for leave under the [FMLA]

prior to the time Defendant mailed her its Medical Leave of Absence packet.").  Indeed, upon

experiencing suicidal thoughts, Plaintiff drove herself to the hospital, called Blackman, left a

message stating that she was under the care of a doctor and would be unable to work for the rest

of the week, and specifically requested that Principal mail her an FMLA leave packet.  Def.'s

Resp. to Additional Facts ¶¶ 3-6.  This was more than adequate to apprise Principal that Plaintiff

was asserting an entitlement to leave under the FMLA.

### C. *FMLA Certification*

Once an employer is put on notice that an employee is claiming an entitlement to FMLA

leave, the employer's duties are triggered. *See Rask v. Fresenius Med. Care N. Am.*, 509 F.3d

4666, 471 (8th Cir. 2007) (stating that once an employee has given proper notice of a claim to

FMLA leave, the employer is then "require[d] . . . to determine whether leave would be covered

by the FMLA"). The employer may treat the leave as FMLA leave without additional

information, or it may "inquire further to determine if the leave is because of a serious health

condition and may request medical certification to support the need for such leave." 29 C.F.R. §

825.302(c). Specifically, the FMLA permits an employer to obtain a certification from an

employee's healthcare provider to support the employee's claimed entitlement to FMLA leave.

*See* 29 U.S.C. § 2613(a). A certification "shall be sufficient if it states": (1) the date on which

the serious health condition commenced; (2) the probable duration of the condition; (3) the

appropriate medical facts regarding the employee's health condition for which FMLA leave is

sought; and (4) a statement that the employee is unable to perform the functions required to do

her job. *Id*. § 2613(b); *see also* 29 C.F.R. § 825.306(b).

Here, Defendant undertook to inquire further into Plaintiff's claimed entitlement to

FMLA leave by mailing her an FMLA leave packet on June 3, 2008, which included a form for

Plaintiff's healthcare provider to complete to certify her need for leave. *See* Pl.'s Resp. to Facts

¶ 9; Pl.'s App. at 1-2. The forms were stamped with a "return by" date of June 23, 2008, which

is consistent with 29 C.F.R. § 825.311(b)'s requirement that an employer grant an employee at

least 15 days to return a certification following an employer's request.

In response to Principal's request for certification, Plaintiff provided a "Certification of Health Care Provider for FMLA" filled out by Dr. Kim on June 11, 2008, which Principal received on June 16, 2008.  *See* Pl.'s App. at 2-3.  Dr. Kim's certification indicated that Parsons' condition fell into the "absence plus treatment" category of serious health conditions, defined as "a period of incapacity of more than 3 consecutive days that also involves (a) Treatment 2 or more times by a health care provider; or . . . treatment by a health care provider on at least 1 occasion which results in a regimen of continuing treatment."  Pl.'s App. at 3.  It also stated that Plaintiff's condition commenced on May 29, 2008 and would probably last for one month.  *Id.* at 2.  Dr. Kim listed Parsons' "dates of current incapacity" as May 29, 2008 to June 30, 2008, and wrote "no work" on the form.  *Id.*  He also checked "No" in response to the questions:  "Is employee able to perform work of any kind?" and "After discussing with employee, is employee able to perform the functions of employee's positions?"  *Id.*  The certification was incomplete, however, in that it did not contain identify Parsons' medical condition or contain a statement of the appropriate medical facts regarding that condition, nor did it provide information about Plaintiff's hospitalization, treatment plan, the dates Dr. Kim saw her or was scheduled to see her in the future, or her prescribed medications.[2]  *Id.*

### D.  *Effect of Incomplete Certification*

Defendant argues that, since Dr. Kim's certification was incomplete, Plaintiff was not entitled to the protections of the FMLA and Defendant was, therefore, justified in denying her

---

[2]  Dr. Kim also checked "no" in response to the question:  "Is it necessary for the employee to be absent from work for the above-prescribed treatment?"  Pl.'s App. at 2.  While this response certainly entitled Principal to request more complete information, it is a reasonable inference that the response was in error, given all the other information on the form indicating that Plaintiff was unable to work due to a serious health condition.

request for FMLA leave.  Defendant cites 29 C.F.R. § 825.312(b) in support of the proposition

that "'If an employee fails to submit a requested certification, the leave is not FMLA protected

leave.'"  Def.'s Reply at 5 (quoting Dep't of Labor Wage and Hour Division Opinion Letter

FMLA2005-2-A and 29 C.F.R. § 825.312(b)).  The provisions of § 825.312(b), however, only

apply where the employee "fails to provide in a timely manner a requested medical certification

to substantiate the need for FMLA leave due to a serious health condition."  Here, Plaintiff did,

in fact, provide a certification, albeit an incomplete one, in a timely manner, making §

825.312(b) inapplicable.[3]

Since Parsons timely provided a certification to Principal at its request, Defendant's

remedy as to the incompleteness of the form is governed by 29 C.F.R. § 825.305(d), which

---

[3] Defendant cites *Reed v. Lear Corp.*, 556 F.3d 674, 682 (8th Cir. 2009), in support of an argument that it could deny Plaintiff's FMLA request on the basis of Dr. Kim's incomplete medical certification.  In *Reed*, the plaintiff submitted a certification form, but it was not incomplete; rather, the certifying physician twice declined to definitively state that the plaintiff had a serious medical condition that necessitated his absence from work.  *Reed*, 556 F.3d at 679-80 ("Reed never submitted a completed form stating that he could not work because of a qualifying health condition.  Accordingly, Reed never made a provisional showing that he was eligible for leave under the FMLA.").  Here, by comparison, Dr. Kim's certification form was incomplete, but it did contain sufficient information to apprise Principal that Plaintiff was suffering from a qualifying serious medical condition and that she would be unable to work until June 30, 2008.

Defendant further cites *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 992-94 (8th Cir. 2005), in support of its assertion that Principal was permitted to deny Plaintiff's FMLA request on the basis of Dr. Kim's incomplete certification.  In *Woods*, however, the plaintiff *never* provided any information to his employer that would verify to the employer that the plaintiff suffered from a qualifying serious health condition.  *Woods*, 409 F.3d at 992.  Indeed, the plaintiff in *Woods* was asked to provide substantiation of his serious health condition, but never provided more than a doctor's note stating that he had been advised to remain off work for a period of time, with "no diagnosis and no mention of a serious health condition."  *Id.*  This stands in stark contrast to the facts of the present case, where Plaintiff promptly informed Defendant of her hospitalization on May 29, 2008, and where Plaintiff provided information to Defendant regarding ongoing treatment and provided a certification form from her physician indicating explicitly that Plaintiff was suffering from one of a list of qualifying "serious health conditions."  *See* Pl.'s App. at 2-3.

provides:  "The employer shall advise an employee whenever the employer finds a certification incomplete, and provide the employee a reasonable opportunity to cure any such deficiency." *See Brady v. Potter*, 476 F. Supp. 2d 745, 748 (N.D. Ohio 2007) ("Because Ms. Brady's medical certificates were incomplete to approve her FMLA requests, the USPS was not only permitted but required to afford her a reasonable time to cure the incomplete certificates."); *Marrero v. Camden County Bd. of Soc. Servs.*, 164 F. Supp. 2d 455, 466 (D.N.J. 2001) ("Regardless, termination is not an appropriate response for an inadequate certification.  Section 825.305(d) provides that where an employer finds a certification incomplete, it must give the employee a reasonable opportunity to cure any deficiencies.").  Rather than provide Plaintiff notice that the form submitted by Dr. Kim was incomplete and provide her an opportunity to cure the deficient form consistent with § 825.305(d), Defendant summarily denied Parsons' request for FMLA leave on the basis that the "medical information provided does not support a serious health condition as defined under the FMLA."  Def.'s App. at 73.  Defendant told Plaintiff that if she wished to have a reconsideration of the decision, she would have to make a request in writing within five days and provide Principal "with sufficient documentation from a health care provider to support your statements."  *Id.*

Plaintiff did not receive Principal's letter until Saturday, June 21, 2008, and she promptly called Defendant on June 23, 2008 to inquire about the denial of her request.  Def.'s Resp. to Additional Facts ¶¶ 21-22.  In that phone call, Principal's employee, Swanson, explained that Plaintiff needed to provide a complete medical certification and information about her hospitalizations, prescriptions, and physician visits.  *Id.* ¶¶ 22-24.  The next day, June 24, 2008, Plaintiff contacted Iowa Lutheran Hospital and had records faxed to Defendant, and Swanson

contacted Dr. Kim's office to request a complete medical certification form.  *Id.* ¶¶ 25-28.

Plaintiff's healthcare providers faxed the requested medical documentation to Swanson on June

24, 2008, but Swanson did not actually receive it until June 25, 2008, due to the timing of the

fax.  *Id.* ¶ 29.   Nonetheless, despite Parsons' prompt remedial efforts to correct the incomplete

certification, Principal sent Plaintiff a letter on June 24, 2008 informing her that her employment

was terminated retroactively to June 16, 2008 for her failure to call in daily from June 17-20,

2008.  Pl.'s Resp. to Facts ¶ 17.   Defendant urges that, since it terminated Plaintiff's

employment for violation of company policy on June 24, 2008, and since it had no actual

information prior to June 25, 2008 that Plaintiff was *actually* suffering from a serious health

condition, its decision to terminate Plaintiff cannot have been a violation of the FMLA.  The

Court finds Defendant's argument in this regard unpersuasive.

On June 20, 2008, the date that Principal denied Plaintiff's FMLA request, Principal had

sufficient information to put it on notice that Plaintiff was likely[4] suffering from a "serious health

condition," as defined by the FMLA.  Title 29 C.F.R. § 825.114(a)(2) specifically provides that,

"For purposes of the FMLA, 'serious health condition' means . . . a physical or mental condition

---

[4]  As Defendant concedes, Plaintiff provided ample and sufficient notice of her need for FMLA leave by June 3, 2008.  Def.'s Resp. to Additional Facts ¶ 6 ("[F]or purposes of its Motion for Summary Judgment, Defendant does not dispute that Plaintiff provided timely and sufficient notice of her request for leave under the FMLA prior to the time Defendant mailed her its Medical Leave of Absence packet.").  Accordingly, on June 20, 2008, the date that Defendant denied Plaintiff's FMLA leave request, it had notice sufficient to apprise it that Plaintiff "may be in need of FMLA leave," thus triggering Defendant's duties.  *Rask*, 509 F.3d at 471 (citations omitted).  On June 20, 2008, however, Defendant also had additional information from Dr. Kim in the certification form attesting that Plaintiff was suffering from a serious health condition. While the certification did not contain all the information to which Principal was entitled, it arguably contained information sufficient to inform Principal not only that Plaintiff "may" be in need of FMLA leave, but that, upon further documentation, she would "likely" be entitled to FMLA leave.

that involves: . . . any period of incapacity requiring absence from work . . . of more than three calendar days, that also involves continuing treatment by . . . a health care provider."  Dr. Kim's certification clearly stated that Plaintiff was suffering from a condition that met those qualifications.[5]  Pl.'s App. at 2-3.  Accordingly, since Principal was on notice that Parsons "might be eligible for FMLA-protected leave," it remained under a duty "to count [her] absence as FMLA leave or inquire further. . . ."  *Scobey v. Nucor Steel-Ark.*, 580 F.3d 781, 787 (8th Cir. 2009); *see also Browning v. Liberty Mut. Ins. Co.*, 178 F.3d 1043, 1049 (8th Cir. 1999) ("Under the FMLA, the employer's duties are triggered when the employee provides enough information to put the employer on notice that the employee may be in need of FMLA leave."); *Thorson v. Gemini, Inc.*, 205 F.3d 370, 381 (8th Cir. 2000) (finding that once proper notice is provided, it is the employer's duties that are "triggered").

Thus, as discussed *supra*, while Defendant was entitled to receive additional information in the form of a complete certification meeting all of the statutory requirements, its appropriate course of action was not to deny Plaintiff's FMLA request; rather, it had an obligation to grant Plaintiff a "reasonable opportunity to cure" the certification.  The Court believes that the factual progression in this case clearly raises a jury question as to whether Defendant violated Plaintiff's FMLA rights by failing to provide her with an adequate opportunity to cure the defects in the

---

[5]  Title 29 C.F.R. § 825.114(a)(2) also provides that a "serious health condition" includes "Inpatient care (i.e., an overnight stay) in a hospital . . . including any period of incapacity (for purposes of this section, defined to mean inability to work . . . , or any subsequent treatment in connection with such inpatient care."  Plaintiff informed Defendant on May 29, 2008 that she was hospitalized, and in subsequent phone calls indicated her inability to work due to ongoing treatment stemming from her hospitalization.  Moreover, Plaintiff had also provided a document, received by Defendant on June 18, 2008, wherein she requested short term disability benefits, stating that she suffered from "anxiety, depression, fe[e]ling overwhelmed work over stressed [sic]."  Def.'s App. at 49.

certification.  Indeed, if Plaintiff can demonstrate that, "had [s]he been given the opportunity to

cure th[e] deficiency, [s]he could have shown that [s]he was in fact . . . actually entitled to

FMLA leave," then Principal's failure to permit Plaintiff a reasonable opportunity to cure the

incomplete certification could be deemed to have "resulted in the loss of FMLA leave to which

[s]he was entitled."  *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 910 (7th Cir. 2008)

(discussing and citing *Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 886-87 (7th Cir. 2005)).

This failure by Principal, however, is of no consequence if Principal is ultimately correct in its

assertion that, regardless of Plaintiff's FMLA leave status, it was permitted to discharge Plaintiff

for violating the company's internal absence reporting requirements.

### E.  *Defendant's Internal Absence Reporting Policy*

There is no dispute that Plaintiff failed to comply with Principal's absence notice policy

on June 17-20, 2008, or that Principal claims to have terminated Plaintiff's employment for her

failure to call in on those days.  *See* Pl.'s Resp. to Facts ¶¶ 2, 15, 16.  There is likewise no

dispute that Plaintiff was aware that Principal expected her to call in notice of her absences daily

while awaiting approval of her FMLA request.  *See id.* ¶¶ 4, 9, 11, 12, 13, 15.  Indeed, the

evidence in the record demonstrates that Plaintiff was informed of Principal's call-in policy

when Principal provided the FMLA packet to her on June 3, 2008.  The instructions included in

the packet specifically stated, "Until your leave is approved, call your leader to notify him or her

of your absence.  You may need to do this daily.  Continue to follow your departmental policies

regarding communication of absence."  Def.'s App. at 28.  The instructions also stressed that

Parsons should "be sure to review the enclosed FMLA Policy for additional information," and

the FMLA policy, included in the packet, specifically stated, "While the decision on your FMLA

is pending, you are responsible to communicate your absence to your leader, in accordance with departmental policies as directed by your leader." *Id.* at 28-29.   Furthermore, Principal's Handbook, which Parsons had access to at all relevant times, provides:

> You are considered absent if you miss work during your normally scheduled work hours for any reason other than Company approved leave of absence. If you do not report to work and/or do not communicate your work status to your leader by the end of the second full business day, your employment will be terminated.

*Id.* at 27.   Principal's Life Administration Service Team Guidelines also state, "if you take a day of unplanned Personal Time Off ("PTO"), you must call your leader (and leave a message if necessary)." *Id.* at 32.   Principal's policies and Parsons' obligation to comply with those policies was further clarified in the letter Parsons received from Howard on June 12, 2008, which stated, "you do need to notify me daily that you will be out of the office until your leave of absence is approved." *Id.* at 45 (emphasis in original).

According to Defendant, the FMLA permits an employer to enforce its usual and customary notice and attendance policies, regardless of whether an employee has attempted to exercise rights under the FMLA.[6]   Defendant cites several cases, including *Bones v. Honeywell,*

---

[6] Defendant points to the following Code of Federal Regulations section dealing with foreseeable leave in support of its assertion that it was entirely within its rights to terminate Plaintiff for her failure to call in on a daily basis from June 17-20, 2008:

> An employer may also require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave.  For example, an employer may require that written notice set forth the reasons for the requested leave, the anticipated duration of the leave, and the anticipated start of the leave. However, failure to follow such internal procedures will not permit an employer to disallow or delay an employee's taking FMLA leave if the employee gives timely verbal or other
> notice.

29 C.F.R. § 825.302 (d); *see also* Def.'s Br. at 12.  Since Defendant has not disputed that

*Inc.*, 366 F.3d 869 (10th Cir. 2004), and *Bacon v. Hennepin County Medical Center*, 550 F.3d 711 (8th Cir. 2008), in support of this assertion.

Defendant first cites *Bones* as supporting a conclusion that an employer is entitled to enforce its internal attendance policies "during the time an employee is on leave, even when the employee submits a medical leave request completed by her physician and the physician indicates the employee is unable to work for a specified period." Def.'s Br. at 12-13 (citing *Bones*, 366 F.3d at 869). In *Bones*, the employer, Honeywell, had a policy that required employees to notify their department or supervisor of absences, in addition to notifying the company's medical department of any requested leaves of absence. *Bones*, 366 F.3d at 874. The plaintiff, Bones, was aware that the policy explicitly provided that employees were to follow the "call-in policy" for their department and that the medical department "would not call [an employee's] manager for [that employee]." *Id*. Bones took personal days on July 19-21, 1999, which she reported to a co-worker at Honeywell. *Id*. On July 22, 1999, Bones went to see her physician due to elbow and stress problems. *Id*. She did not phone in her absence that day, and neither reported to work nor called in absences for the next two work days, July 23 and July 26, 1999. *Id*. On Friday, July 23, however, Bones' boyfriend delivered a medical leave of absence

---

Plaintiff properly provided notice of her need for leave, whether FMLA or otherwise, § 825.302(d) provides little support for Defendant's arguments. Indeed, if anything, § 825.302(d) actually supports a denial of Defendant's request for summary judgment on the facts in this case. As referenced, § 825.302(d) permits an employer to require employees to abide by "usual and customary notice and procedural requirements for requesting leave," but also provides that "failure to follow such internal employer procedures will not permit an employer to disallow or delay an employee's taking FMLA leave if the employee gives timely verbal or other notice." Taking the evidence in the light most favorable to Plaintiff, the Court believes that a reasonable jury could find, on the facts of this case, that Defendant disallowed Plaintiff's FMLA leave because she did not comply with Defendant's usual and customary notice and procedural requirements for requesting leave on a daily basis, despite the fact that Plaintiff unquestionably provided timely verbal and other notice of her claim to FMLA leave.

request to Honeywell's medical department, which contained a form completed by Bones' doctor indicating that she had been seen on July 22 and would be unable to work from July 18 through August 16, 1999. *Id.* Pursuant to its normal practices, the medical department did not process Bones' leave request until July 29, 2009. *Id.* In a letter dated July 27, 1999, Bones was notified that she was terminated because she failed to report her absences to her supervisor for three consecutive work days. *Id.* at 878.

Bones asserted that her employer interfered with her rights under the FMLA by terminating her employment when she was entitled to FMLA leave. *Id.* at 877. The Tenth Circuit, proceeding on the assumption that Bones' absence would have been covered by the FMLA, affirmed the district court's entry of summary judgment in favor of Bones' employer. *Id.* The court found that "Bones' interference claim fails because Honeywell successfully established that Bones would have been dismissed regardless of her request for FMLA leave." *Id.* at 877 ("A reason for dismissal that is unrelated to a request for an FMLA leave will not support recovery under an interference theory."). Specifically, the court noted that Bones' "request for an FMLA leave does not shelter her from the obligation which is the same as that of any other Honeywell employee, to comply with Honeywell's employment policies, including its absence policy." *Id.* at 878 ("If dismissal would have occurred regardless of the request for an FMLA leave . . . an employee may be dismissed even if dismissal prevents her from exercise of her right to an FMLA leave.").

Defendant next cites *Bacon* in support of the assertion that an "employee who violates her employer's established call-in policy can be terminated on that basis *even if* she has requested approval for FMLA leave." Def.'s Br. at 3 (citing *Bacon*, 550 F.3d at 712). In *Bacon*,

the Eighth Circuit evaluated whether an employer interfered with an employee's right to FMLA leave by terminating her employment for failing to comply with the employer's absence policy. *Bacon*, 550 F.3d at 712.  On July 8, 2004, Bacon suffered an outbreak of hives and requested FMLA paperwork.  *Id*.  Her physician filled out a medical certification form on July 14, 2004, and Bacon submitted the form to her employer on July 19, 2004.  *Id*. at 712-13.  Bacon's supervisor accepted the paperwork, but did not indicate whether the leave was approved or denied, instead telling Bacon that she needed a note from her physician stating that she could not return to work until she saw an allergist.  *Id*. at 713.  When Bacon saw her physician later that day, her physician filled out a new certification form, indicating that Bacon would require intermittent leave when she suffered from a hives outbreak and stating that Bacon could not return to work until she saw an allergist.  *Id*.  For approximately one month, Bacon called in daily to report her absences.  *Id*.  During this one month period, her employer reported her absences as FMLA leave.  *Id*.  On August 5, 2004, however, Bacon stopped calling in on a daily basis, purportedly because her supervisor told her she did not need to call in while on FMLA leave.  *Id*.  On August 11, 2004, Bacon was terminated for failing to call in for three consecutive work days.  In reviewing the district court's grant of summary judgment in favor of the employer, the Eighth Circuit noted that Bacon had failed to provide any probative evidence indicating that her supervisor had told her she did not have to comply with the company's standard absence reporting procedures.  *Id*. at 716.  Accordingly, "Because Bacon was terminated for failing to comply with [the employer's] call-in policy, and she would have been terminated for doing so irrespective of whether these absences were related to FMLA leave, the district court correctly held she did not state an interference claim under the FMLA."  *Id*. at 714.

The Court specifically found that the FMLA permits employers to require employees to report periodically on their status and intent to return to work, and that "[e]mployers who enforce such policies by firing employees on FMLA leave for noncompliance do not violate the FMLA." *Id.* at 715 (citing *Bones*, 366 F.3d at 878).

The Court finds that neither *Bones* nor *Bacon* govern the outcome of this case, as both are readily distinguishable on their facts. In the present case, Plaintiff personally provided information to Defendant on at least three occasions between May 29, 2008 and June 16, 2008 that she was suffering from a serious health condition and that she would be unable to return to work for approximately a month. After first informing Defendant on May 29, 2008 that she was hospitalized and would be absent for the remainder of the week, Plaintiff, on June 2, 2008, then informed either Howard or Blackman via voicemail that she was under a doctor's care and would be unable to work for at least one month. Def.'s Resp. to Additional Facts ¶¶ 4, 6. On June 9, 2008, Plaintiff left Howard a voice message advising that she would be absent until the end of the month.[7] Pl.'s Resp. to Facts ¶ 10. And on June 16, 2008, Defendant received an Employee Request for Family and Medical Leave Act, which included a form signed by Plaintiff stating that she was requesting a leave of absence from May 29, 2008 to July 15, 2008.[8] Pl.'s App. at 1. Moreover, the Request for FMLA leave was accompanied by a medical certification form signed by Dr. Kim which stated that Plaintiff's "dates of current incapacity" were May 29, 2008

---

[7] Defendant asserts that Plaintiff only told Howard that she would be absent for an "undetermined" amount of time in the June 9, 2008 call. Pl.'s Response to Facts ¶ 10. For purposes of the present motion, however, the Court must construe the facts in the light most favorable to the non-moving party.

[8] The request for leave to July 15, 2008 was made for the first time in Plaintiff's FMLA paperwork.

through June 30, 2008, and which indicated that Plaintiff was unable to perform work of any kind and was unable to perform the functions of her position with Principal.  Pl.'s App. at 1-2. Def.'s Resp. to Additional Facts ¶¶ 4, 6.

In *Bones*, in contrast, the plaintiff did provide a request for medical leave stating specific dates of absence, from July 18 to August 16, 1999, but Bones provided the request to the medical department, despite specific knowledge that she was obligated to report her absences directly to her supervisor.  *See Bones*, 366 F.3d at 874.  Since Bones was well aware that the medical department would not relay her leave request to her supervisor, and since the medical department did not, in fact, relay the leave request to Bones' supervisor, there could be  no reasonable inference that Bones' supervisor terminated her for any reason other than for violation of the company's absence reporting policy.  Similarly in *Bacon*, the employer had no information of a firm return to work date for the plaintiff, in stark contrast to the present factual scenario.  *Bacon*, 550 F.3d at 715.  Indeed, the employer's absence policy in *Bacon* "require[d] employees on FMLA leave either to provide [the employer] with a tentative date for their return to work or to call in daily to report their absence," indicating that the employee in *Bacon* would not have been required to call in daily if she had provided a firm return to date work like Parsons did.[9]  *Id.*

As Defendant correctly points out, 29 C.F.R. § 825.309(a) provides that "[a]n employer may require an employee on FMLA leave to report periodically on the employee's status and intent to return to work."  Defendant fails to recognize, however, that the regulation goes on to provide that the "employer's policy regarding such reports may not be discriminatory and *must*

---

[9]  Defendant also cites *Lewis v. Holsum of Ft. Wayne, Inc.*, 278 F.3d 706 (7th Cir. 2002). The policy at issue in *Lewis*, however, also provided that an employee only had to call in on a daily basis if they did not provide a return to work date.  *Lewis*, 278 F.3d at 710.

*take into account all of the relevant facts and circumstances related to the individual employee's leave situation*." 29 C.F.R. § 825.309(a) (emphasis added). In the present factual context, the Court finds that a reasonable jury could conclude that Principal's insistence that Plaintiff continue to call in on a daily basis, despite Plaintiff's unwavering reports that she would be unable to return to work prior to June 30, 2008, ran afoul of the requirement in § 825.309(a) that the employer "take into account all of the relevant facts and circumstances" in requiring periodic status reports.[10] *See Call v. Fresenius Med. Care Holdings, Inc.*, 534 F. Supp. 2d 184, 198 (D. Mass. 2008) (finding a factual issue under § 825.309(a) where the employer required the employee to call in every day despite having already been granted leave for certain days).[11]

_____

[10] The provision permitting employers to obtain periodic status reports from an absent employee was designed to permit employers to obtain information sufficient to meet their staffing needs, without being wholly dependent on the whims of the employee. *See Jones v. Denver Pub. Schs.*, 427 F.3d 1315, 1320 (10th Cir. 2005) (finding that employers may request periodic status updates so that they are not placed "in a position of grave uncertainty in complying with their obligations under the FMLA"); *see also Gilliam v. United Parcel Serv., Inc.*, 223 F.3d 969, 971 (7th Cir. 2000) (noting that the FMLA does not "authorize employees on leave to keep their employers in the dark about when they will return"). The Court is dubious that Principal's policy of rote adherence to daily call-in provisions in situations where it has already been notified that an employee will be absent furthers any legitimate purpose of the employer.

[11] Plaintiff's resistance brief is mostly devoted to recounting case law wherein courts have indicated that certain employer call-in requirements can, if more onerous than the requirements of the FMLA, "'improperly impose[] an additional layer of notice as a precondition to [Plaintiff's] exercise of [her] FMLA rights.'" *Mason v. Steelcraft, Inc.*, No. C-1-07-584, 2009 WL 650387, at *5 (S.D. Ohio Mar. 10, 2009); *see also Cavin v. Honda of Am. Mfg.*, 346 F.3d 713, 720 (6th Cir. 2003) ("[T]he FMLA does not permit an employer to limit his employee's FMLA rights by denying them whenever an employee fails to comply with internal procedural requirements that are more strict than those contemplated by the FMLA."). After careful review, the Court believes that the cases cited by Plaintiff ultimately stand for the simple proposition that an employer cannot enforce policies that conflict with or impose additional notice requirements beyond those of the FMLA. These cases, however, do not support the proposition that an employer may never require an employee to provide periodic notice of their status and intent to return to work. Indeed, as discussed extensively *supra*, employers may request such ongoing reports from an employee pursuant to § 825.309(a), so long as the policy

Accordingly, there is a genuine issue of material fact as to whether Principal was permitted to require Plaintiff to comply with its absence reporting policy in this case since the policy arguably failed to "take into account all of the relevant facts and circumstances related to [Plaintiff's] leave situation," as required by § 825.309(a).[12]

## IV.  CONCLUSION

For the reasons stated herein, Defendant's Motion for Summary Judgment (Clerk's No. 9) is hereby DENIED.  The Court notes that trial in this matter is currently scheduled for October 18, 2010, though the Court is amenable to moving this date forward.  If the parties so desire, they should contact the presiding Magistrate Judge to arrange for earlier Final Pretrial Conference and Trial dates.

IT IS SO ORDERED.

Dated this ___25th___ day of February, 2010.

_____
ROBERT W. PRATT, Chief Judge
U.S. DISTRICT COURT

---

requiring such periodic reports "take[s] into account all of the relevant facts and circumstances related to the individual employee's leave situation."

[12]  While neither party addresses the separate interference and retaliation claims in the context of the present motion, the factual issues identified in this order could conceivably apply to both claims.  With respect to the interference claim, if Defendant's policy did not take into account all the relevant facts and circumstances of Plaintiff's leave situation, such that Defendant was not permitted to enforce the policy, then Defendant could arguably be liable under an interference theory if it denied Plaintiff FMLA benefits to which she was entitled.  Likewise, under a retaliation theory, if Defendant could not enforce its absence notice policy in this situation, then its asserted legitimate nondiscriminatory reason for Plaintiff's termination is arguably not a legitimate basis for the adverse employment action.